CT

ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
OCT 3 1 2003
CLERK, U.S. DISTRICT COURT
By
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RUDY RODRIGUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 4:03CV055-Y |
| v. | § | |
| | § | |
| CONAGRA GROCERY PRODUCTS COMPANY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Arthur T. Carter
HAYNES AND BOONE, L.L.P.
901 Main Street, Suite 3100
Dallas, Texas 75202
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

and

Helen Thigpen
HAYNES AND BOONE, L.L.P.
2502 N. Plano Road, Suite 4000
Richardson, Texas 75082-4101
Telephone: (972) 739-6900
Telecopier: (972) 680-7551

ATTORNEYS FOR DEFENDANT
CONAGRA GROCERY PRODUCTS
COMPANY

## TABLE OF CONTENTS


I. Statement Of Facts ........ 2
  A. Plaintiff's Temporary Employment At ConAgra. ........ 2
  B. Job Offer. ........ 2
  C. Plaintiff's Claim. ........ 4
  D. Diabetes ........ 5
  E. Plaintiff's Lack Of Evidence. ........ 6
II. Arguments And Authority ........ 6
  A. ConAgra Did Not Regard Plaintiff As Substantially Limited In Any Major Life Activity. ........ 9
  B. Plaintiff's Failure To Control His Diabetes Cannot Support A Disability Claim. ........ 11
    1. A Perceived Impairment Must Meet The Requirements Of An Actual Impairment. ... 13
    2. A Failure To Control An Illness Is Not Protected Under The ADA/TCHRA. ........ 15
III. Conclusion ........ 17

## TABLE OF AUTHORITIES

### A. CASES

*Bowers v. Multimedia Cablevision, Inc.*,
No. 96-1298-JTM, 1998 WL 856074 (D. Kan. Nov. 3, 1998) ....................16

*Brookins v. Indianapolis Power & Light Co.*,
90 F. Supp.2d 993 (S.D. Ind. 2000) ....................15

*Burch v. Coca-Cola Co.*,
119 F.3d 305 (5th Cir. 1997), *cert denied*, 22 U.S. 1084 (1998) ....................7, 9, 10

*Burroughs v. City of Springfield*,
163 F.3d 505 (8th Cir. 1998) ....................15

*Christian v. St. Anthony Med. Ctr.*,
117 F.3d 1051 (7th Cir. 1997), *cert. denied*, 523 U.S. 1022 (1998) ....................14

*Deas v. River West, L.P.*,
152 F.3d 471 (5th Cir. 1998), *cert. denied*, 527 U.S. 1035 (1999) ....................8, 9, 10

*Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc.*,
242 F.3d 610 (5th Cir. 2001) ....................9

*E.E.O.C. v. J.B. Hunt Transp., Inc.*,
321 F.3d 69 (2d Cir. 2003) ....................10

*Fenton v. Pritchard Corp.*,
926 F. Supp. 1437 (D. Kan. 1996) ....................9, 10

*Forsyth v. Barr*,
19 F.3d 1527 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994) ....................11

*Francis v. City of Meriden*,
129 F.3d 281 (2d Cir. 1997) ....................13, 14, 15

*Franklin v. U.S. Postal Serv.*,
687 F. Supp. 1214 (S.D. Ohio 1988) ....................17

*Gowesky v. Singing River Hosp. Sys.*,
321 F.3d 503 (5th Cir. 2003), *cert. denied*, --- U.S. --- (October 6, 2003) ....................7, 9

**TABLE OF AUTHORITIES**
**(Cont'd)**

*Harrington v. Rice Lake Weighing Sys., Inc.*,
122 F.3d 456 (7th Cir. 1997) ........................................................................ 8

*Herrera v. CTS Corp.*,
183 F. Supp.2d 921 (S.D. Tex. 2002) ........................................................... 6

*Hewitt v. Alcan Aluminum Corp.*,
185 F. Supp.2d 183 (N.D.N.Y. 2002) ........................................................... 16, 17

*Lessard v. Osram Sylvania, Inc.*,
175 F.3d 193 (1st Cir. 1999) ........................................................................ 13, 15

*Lindloff v. Schenectady Int'l*,
972 F. Supp. 393 (S.D. Tex. 1997) ................................................................ 12

*Moore v. J.B. Hunt Transp., Inc.*,
221 F.3d 944 (7th Cir. 2000) ........................................................................ 8, 9, 11, 13

*Murphy v. United Parcel Serv., Inc.*,
527 U.S. 516 (1999) ..................................................................................... 9, 10, 16

*Pangalls v. Prudential Ins. Co. of Am.*,
No. 96-0167, 1996 WL 612469 (E.D. Pa. Oct. 15, 1996) ................................... 15

*Pegram v. Honeywell, Inc.*,
No. 3:01-CV-0854-P, 2003 U.S. Dist. LEXIS 1726 (N.D. Tex. Feb. 5, 2003) ......... 8

*Roberts v. County of Fairfax, Va.*,
937 F. Supp. 541 (E.D. Va. 1996) ................................................................. 16, 17

*Roberts v. Unidynamics Corp.*,
126 F.3d 1088 (8th Cir. 1997) ...................................................................... 10

*Rose v. Home Depot USA, Inc.*,
186 F. Supp.2d 595 (D. Md. 2002) ................................................................ 17

*Schoolman v. UARCO, Inc.*,
No. 94C5598, 1996 WL 388468 (N.D. Ill. July 8, 1996)
*aff'd in relevant part*, 122 F.3d 374 (7th Cir. 1997) ......................................... 8

## TABLE OF AUTHORITIES
## (Cont'd)


*Schuler v. Supervalu, Inc.*,
336 F.3d 702 (8th Cir. 2003) .......... 10

*Siesken v. Village of Arlington Heights*,
65 F.3d 664 (7th Cir. 1995) .......... 15

*Standard v. A.B.E.L., Inc.*,
161 F.3d 1318 (11th Cir. 1998) .......... 10

*Stinson v. West Suburban Med. Ctr.*,
No. 97-C-3701, 1998 U.S. Dist. LEXIS 566 (N.D. Ill. Jan. 13, 1998) .......... 9

*Sutton v. United Air Lines, Inc.*,
527 U.S. 471 (1999) .......... 9, 11, 14, 16

*Tangires v. The Johns Hopkins Hosp.*,
79 F. Supp.2d 587 (D. Md.), *aff'd without op.*, 230 F.3d 1354 (4th Cir. 2000) .......... 16, 17

*Todd v. McCahan*,
158 F. Supp.2d 1369 (N.D. Ga. 2000) .......... 17

*Tudyman v. United Airlines*,
608 F. Supp. 739 (C.D. Cal. 1984) .......... 8

*Van Stan v. Fancy Colours & Co.*,
125 F.3d 563 (7th Cir. 1997) .......... 15

*Watson v. City of Miami Beach*,
177 F.3d 932 (11th Cir. 1999) .......... 14

*Zenor v. El Paso Healthcare Sys., Ltd.*,
176 F.3d 847 (5th Cir. 1999) .......... 9, 10


### B. RULES AND STATUTES


42 U.S.C. § 12102(2) .......... 7

42 U.S.C. § 12112(a) .......... 6

29 C.F.R. § 1630.2(1) .......... 7

**TABLE OF AUTHORITIES**
**(Cont'd)**

29 C.F.R. § 1630.2(g) .......... 7

29 C.F.R. § 1630.2(h) .......... 14

29 C.F.R. § 1630.2(j)(3)(i) .......... 9

TEX. LAB. CODE § 21.051 .......... 6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RUDY RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>CONAGRA GROCERY PRODUCTS COMPANY,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.<br>4:03CV055-Y |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, ConAgra Grocery Products Company ("ConAgra" or "Defendant"), offered Plaintiff, Rudy Rodriguez ("Rodriguez" or "Plaintiff"), a job. The offer required him to pass a physical exam. He did not pass the physical because the doctor believed that his diabetes was not properly controlled. As a result, ConAgra withdrew the job offer.

Based on ConAgra's withdrawal of that particular job offer, Plaintiff asserts disability discrimination under the Texas Commission on Human Rights Act ("TCHRA"). He contends not that he was actually disabled, but rather that ConAgra *regarded* him as disabled. However, Plaintiff cannot prevail on his "regarded as" claim because he cannot show, as required, that (1) ConAgra considered him as substantially limited in a major life activity, and (2) ConAgra held that perception due to an impairment that would be covered under the statute. The only fact that Plaintiff can show is that he was rejected for a single job due to a belief that he was not

controlling his diabetes. This is not enough to satisfy the two requirements under the "regarded as" theory. Thus, Plaintiff's claim fails, and his case must be dismissed.

## I. STATEMENT OF FACTS[1]

### A. Plaintiff's Temporary Employment At ConAgra.

1. Plaintiff worked as a temporary employee at ConAgra's Ranch Style Beans plant from January 25, 2002, to March 1, 2002.[2] (Def.'s MSJ App. 17, Rodriguez depo. 62). Plaintiff was placed there and paid by Western Staffing Service, a temporary agency. (Def.'s MSJ App. 18, Rodriguez depo. 63).

2. As a temporary employee, Plaintiff did not work in any particular position. (Def.'s MSJ App. 21, Rodriquez depo. 74). Rather, he performed various entry-level duties ranging from watching the beans being canned to cutting bacon to be cooked with the beans. (Def.'s MSJ App. 19, 20, Rodriguez depo. 70, 73).

### B. Job Offer.

3. Around February 28, Rodriguez was offered an entry-level "utility" position at the Ranch Style Beans plant. (Def.'s MSJ App. 22, Rodriquez depo. 76; Def.'s MSJ App. 46a, Zamora depo. 35). That position was one of approximately 16 job classifications under the collective bargaining agreement at the plant. (Def.'s MSJ App. 46, Zamora depo. 27). The offer was contingent on him passing a background check, drug screen, and physical exam. (Def.'s MSJ App. 23-24, Rodriguez depo. 78-79).

4. Accordingly, Plaintiff went, on March 1, to Occupational Health Solutions for the required physical exam. (Def.'s MSJ App. 25, Rodriguez depo. 82; Def.'s MSJ App. 78, Morris depo. 14; Def.'s MSJ App. 92, Physical Exam Record [Morris depo. ex. 1]). Occupational

---

[1] The Statement of Facts is based largely on Rodriguez' deposition testimony. For purposes of Defendant's Motion for Summary Judgment only, Defendant will assume the cited portions of his testimony to be true.

[2] All referenced dates occurred in 2002 unless otherwise indicated.

Health Solutions is an independent clinic that is not in any way related to ConAgra. (Def.'s MSJ App. 73, Morris depo. 7; Def.'s MSJ App. 47-49, Zamora depo. 53-55). Dr. Jerry Morris, an occupational physician at the clinic, performed the physical exam. (Def.'s MSJ App. 26, Rodriguez depo. 83; Def.'s MSJ App. 76, Morris depo. 11). An occupational physician specializes in providing care for work-related injuries and providing other occupational support, such as return-to-work physicals, pre-employment physicals, and drug screens. (Def.'s MSJ App. 74-76, Morris depo. 9-11).

5. A pre-employment physical exam is different from a regular physical exam that is performed by a doctor who is actually treating or caring for the patient. (Def.'s MSJ App. 97, Garcia depo. 29). The pre-employment physical is more "basic." (Def.'s MSJ App. 97, Garcia depo. 29). ConAgra was among hundreds of companies that Occupational Health Solutions did physical exams for. (Def.'s MSJ App. 76, Morris depo. 11). Rodriguez believes that his pre-employment exam by Dr. Morris was thorough. (Def.'s MSJ App. 27, Rodriguez depo. 84).

6. Dr. Morris determined that Plaintiff was not medically qualified for the position at the Ranch Style Beans plant because his diabetes was uncontrolled. (Def.'s MSJ App. 30-31, Rodriguez depo. 95-96; Def.'s MSJ App. 81, 87-88, Morris depo. 26, 59-60; Def.'s MSJ App. 93, Qualification Form). Dr. Morris gave Plaintiff a form to take back to the Ranch Style Beans plant. (Def.'s MSJ App. 30, Rodriguez depo. 95; Def.'s MSJ App. 80, Morris depo. 25; Def.'s MSJ App. 93, Qualification Form). The form stated that Plaintiff was "[n]ot medically qualified" due to "uncontrolled diabetes." (Def.'s MSJ App. 93, Qualification Form).

7. Based on Dr. Morris' conclusion as stated in the form, Elza Zamora, the Human Resources Manager at the Ranch Style Beans plant, withdrew the job offer that had been made to Plaintiff. (Def.'s MSJ App. 32, 33, Rodriguez depo. 98, 100; Def.'s MSJ App. 59-60, Zamora

depo. 79-80). Zamora did not speak to Dr. Morris about Plaintiff prior to withdrawing the job offer. (Def.'s MSJ App. 51, Zamora depo. 57). Thus, the only information Zamora had from Dr. Morris was the form Plaintiff brought back, and all Zamora knew about Dr. Morris's reason for not qualifying Rodriguez was that Rodriguez's diabetes was uncontrolled. (Def.'s MSJ App. 50-51, 52, 53, Zamora depo. 56-57, 60, 62). To Zamora, uncontrolled diabetes means that a diabetic is not properly taking his medication. (Def.'s MSJ App. 54, 62-64, Zamora depo. 68, 93-95). When Zamora withdrew the job offer, Plaintiff did not ask her whether any other jobs were available to him at the plant. (Def.'s MSJ App. 33, Rodriguez depo. 100).

**C. Plaintiff's Claim.**

8. Plaintiff's sole claim in this case is that ConAgra's withdrawal of the job offer for an entry-level position constitutes disability discrimination under the TCHRA. (Def.'s MSJ App. 36-37, Rodriguez depo. 104-05). Plaintiff does not argue that he is actually disabled. (Def.'s MSJ App. 37, Rodriguez depo. 105). Rather, he argues that ConAgra regarded him as disabled. (Def.'s MSJ App. 37, Rodriguez depo. 105). The only major life activity that Plaintiff contends that ConAgra regarded him as substantially limited in is working. (Def.'s MSJ App. 38-40, Rodriguez depo. 106-08). The crux of Plaintiff's complaint is that ConAgra refused to employ him at the Ranch Style Beans plant because Dr. Morris incorrectly concluded that his diabetes was uncontrolled.[3] (Def.'s MSJ App. 28, 38-39, Rodriguez depo. 93, 106-07). Plaintiff

[3] Interestingly, Plaintiff has *no* evidence that, at the time of the physical, his diabetes was under control. (Def.'s MSJ App. 29, Rodriguez depo. 94; Def.'s MSJ App. 115-116, Garcia depo. 173-74; Def.'s MSJ App. 139-140, DeFronzo depo. 132-33). In fact, Plaintiff admits that he does not know whether, at the time of the physical, his diabetes was under control. (Def.'s MSJ App. 29, Rodriguez depo. 94). More specifically, Plaintiff cannot recall whether, at the time of the physical, he was only taking the medication once a day, rather than twice a day as prescribed. (Def.'s MSJ App. 16-17, Rodriguez depo. 61-62). Indeed, Plaintiff admits, and his doctor confirms, that he has a history of being noncompliant with his medication and diet, despite his doctor's repeated warnings. (Def.'s MSJ App. 3-4, 6, 9, 10, 13-14, Rodriguez depo. 14-15, 22, 38, 39, 50-51; Def.'s MSJ App. 106-106a, 111-112, 113, Garcia depo. 88-89, 135-36, 138, 147; Def.'s MSJ App. 121, 112, 123, 124-128, Medical Records). For instance, as indicated above, if he did not have insurance or money to buy his medication, he would not take his medication or would take his medication only once a day rather than twice, as prescribed. (Def.'s MSJ App. 9-10, 11, Rodriguez

believes that ConAgra would have hired him if it thought that his diabetes was under control. (Def.'s MSJ App. 34, Rodriguez depo. 102).

**D. Diabetes.**

9. Diabetes cannot be cured, but rather must be managed or controlled by medication, diet, and exercise. (Def.'s MSJ App. 5, Rodriguez depo. 18; Def.'s MSJ App. 84, Morris depo. 50; Def.'s MSJ App. 99, Garcia depo. 64; Def.'s MSJ App. 131-132, DeFronzo depo.[4] 28-29). Diabetes is the failure of the body to properly regulate blood sugar. (Def.'s MSJ App. 79, Morris Depo. 18). Individuals with diabetes are unable to produce sufficient or effective insulin, which is needed to control the sugar levels in the bloodstream. (Def.'s MSJ App. 3, Rodriguez depo. 14; Def.'s MSJ App. 79, Morris depo. 18). When insulin is not sufficient or effective, glucose stays in the bloodstream rather than entering cells to produce energy. (Def.'s MSJ App. 82, Morris depo. 47; Def.'s MSJ App. 87, Garcia depo. 59;). This leads to what is commonly known as "high blood sugar." (Def.'s MSJ App. 3-4, Rodriguez depo. 14-15; Def.'s MSJ App. 83, Morris depo. 48; Def.'s MSJ App. 87, Garcia depo. 59).

10. Plaintiff's doctor and medical expert both agree that diabetes is something that can be controlled. (Def.'s MSJ App. 101-103, Garcia 66-68; Def.'s MSJ App. 133, DeFronzo depo. 30). One of the goals in controlling diabetes is keeping the blood sugar at an acceptable level. (Def.'s MSJ App. 100, Garcia depo. 65; Def.'s MSJ App. 133, DeFronzo depo. 30). Diabetics must take an active involvement in controlling their diabetes. (Def.'s MSJ App. 85, Morris depo. 51; Def.'s MSJ App. 136, DeFronzo depo. 53). Diabetics should be under the

---

depo. 38-39, 49). He has also missed scheduled doctor's appointments and failed to see specialists that his primary care physician, Dr. Ramon Garcia referred him to. (Def.'s MSJ App. 7, 8, 11, 15, Rodriguez depo. 25, 32, 45, 54). Additionally, although Dr. Garcia has recommended that he keep a diary of his blood sugar levels, Plaintiff has never done so. (Def.'s MSJ App. 6, Rodriguez depo. 22).

[4] Defendant has filed a Motion to Strike Reports and to Exclude Testimony of Plaintiff's Expert Ralph DeFronzo and Supporting Brief (hereinafter "Motion to Strike"). Any references to Dr. DeFronzo's deposition testimony in this Brief should not be construed as a waiver of any of Defendant's arguments in its Motion to Strike.

regular care of a doctor. (Def.'s MSJ App. 85-86, Morris depo. 51-52; Def.'s MSJ App. 137-138, DeFronzo depo. 71-72). They should see their primary care physician at least three to four times a year. (Def.'s MSJ App. 86, Morris depo. 52; Def.'s MSJ App. 104, Garcia depo. 69). Any medication should obviously be taken regularly, as prescribed by the doctor. (Def.'s MSJ App. 134-135, DeFronzo depo. 37-38). Additionally, diabetics should see an ophthalmologist once a year due to the damage that elevated glucose levels can do to the eyes. (Def.'s MSJ App. 86, Morris depo. 52; Def.'s MSJ App. 105, Garcia depo. 71).

### E. Plaintiff's Lack Of Evidence.

11. As stated above, the basis of Plaintiff's complaint is that Dr. Morris incorrectly determined that his diabetes was uncontrolled. (Def.'s MSJ App. 28, 38-39, Rodriguez depo. 93, 106-07). Rodriguez admits that he does not have any reason to think that ConAgra has any prejudices or mistaken beliefs about diabetes. (Def.'s MSJ App. 34, Rodriguez depo. 102). In fact, as Plaintiff himself admits, ConAgra employs a number of diabetic employees at the Ranch Style Beans plant. (Def.'s MSJ App. 35, Rodriguez depo. 103; Def.'s MSJ App. 55, 57, 58, 61, Zamora depo. 69, 72, 74, 81). Moreover, one of those diabetic employees was hired around the same time that Plaintiff was offered a job and was also examined by Dr. Morris. (Def.'s MSJ App. 55, Zamora depo. 69; Def.'s MSJ App. 94, Salazar Medical Qualification Form).

## II. ARGUMENTS AND AUTHORITY

The TCHRA, like the Americans with Disabilities Act ("ADA"),[5] prohibits employers from discriminating against a qualified individual with a disability in regard to hiring, advancement or discharge because of the individual's disability. TEX. LAB. CODE § 21.051; 42 U.S.C. § 12112(a). In order to establish a *prima facie* case of intentional discrimination under

---

[5] The TCHRA is modeled after Federal Civil Rights law. Federal law prohibiting disability discrimination by employers is found in the ADA, and thus courts look to that statute in interpreting the TCHRA. *E.g., Herrera v. CTS Corp.*, 183 F. Supp.2d 921, 925 (S.D. Tex. 2002).

the ADA/TCHRA, a plaintiff must show that he (1) suffers from a disability; (2) was qualified for the job; (3) was subject to an adverse employment action; and (4) was treated less favorably than non-disabled employees. *E.g., Burch v. Coca-Cola Co.*, 119 F.3d 305, 320 (5th Cir. 1997), *cert denied*, 22 U.S. 1084 (1998).

As a threshold matter then, before reaching any issues of legitimate nondiscriminatory reasons or affirmative defenses, the plaintiff has the burden of showing that he is disabled within the meaning of the ADA/TCHRA. *Burch*, 119 F.3d at 320. A plaintiff's failure to establish that he suffers from a disability, as that term is defined in the ADA, is fatal to his claim. *Id.* at 321. The plaintiff may meet this requirement by showing that he either: (a) has a mental or physical impairment that substantially limits one or more major life activities, (b) has a record of such impairment, or (c) is regarded as having such an impairment. 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g).

Rodriguez argues that he was "regarded as" having such an impairment. Under the EEOC regulations, a person is deemed to be regarded as having a disability if he (1) has a physical or mental impairment which is not substantially limiting but which the employer perceives as constituting a substantially limiting impairment; (2) has an impairment which is substantially limiting only because of the attitudes of others towards such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment. 29 C.F.R. § 1630.2(1); *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 508 (5th Cir. 2003), *cert. denied*, --- U.S. --- (October 6, 2003).

Courts have recognized the inherent difficulty with the "regarded as" prong. It is innately and dangerously a circular argument: A plaintiff complains of an employment action, such as, in this case, a failure to be hired. He argues that he did not get the job because the employer

regarded him as disabled. However, to prove that the employer regarded him as disabled, the plaintiff points to the fact that he did not get the job. In other words, his proof of discrimination is often simply the act that he alleges to be discriminatory. *See, e.g., Harrington v. Rice Lake Weighing Sys., Inc.*, 122 F.3d 456, 461 (7th Cir. 1997) ("[t]he notion that [defendant] must have fired [plaintiff] because it regarded him as disabled and that it plainly regarded him as disabled because it fired him is attractive but circular – it lacks a causal antecedent"); *Schoolman v. UARCO, Inc.*, No. 94C5598, 1996 WL 388468, at *11 (N.D. Ill. July 8, 1996) (plaintiff's argument was circular where he pointed to no other facts other than his own demotion and ultimate termination to support the conclusion that the employer perceived him as disabled) (attached as Exhibit 1), *aff'd in relevant part*, 122 F.3d 374 (7th Cir. 1997).

Accordingly, courts must guard against the misleading logic that many plaintiffs rely on in urging their "regarded as" claims. The question is not simply whether the plaintiff did not get a job because of some condition or perceived condition. This will always be the basic premise in any "regarded as" lawsuit.[6] Rather, there must be more. To establish that he was regarded as disabled, the plaintiff must show two distinct things: (1) that the employer considered him to be substantially limited in a major life activity and (2) that the employer's belief was due to an "impairment" that would have been covered by the ADA/TCHRA. *Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 950-51, 954 (7th Cir. 2000); *Deas v. River West, L.P.*, 152 F.3d 471, 476 (5th Cir. 1998), *cert. denied*, 527 U.S. 1035 (1999) and 527 U.S. 1044 (1999); *Pegram v. Honeywell,*

---

[6] One court has explained it well:

> [R]efusal to hire someone for a single job does not in and of itself constitute perceiving the plaintiff as a handicapped individual. If this were the case, then anyone who failed to obtain a job because of a single requirement which may not be essential to the job would become a handicapped individual because the employer would thus be viewing the applicant's failure as a handicap. This Court refuses to make the term handicapped a meaningless phrase.

*Tudyman v. United Airlines*, 608 F. Supp. 739, 746 (C.D. Cal. 1984).

*Inc.*, No. 3:01-CV-0854-P, 2003 U.S. Dist. LEXIS 1726, at *35 n.10 (N.D. Tex. Feb. 5, 2003) (attached as Exhibit 2); *Fenton v. Pritchard Corp.*, 926 F. Supp. 1437, 1444 (D. Kan. 1996). Rodriguez cannot meet either of these requisites.

**A. ConAgra Did Not Regard Plaintiff As Substantially Limited In Any Major Life Activity.**

First, Plaintiff cannot show that ConAgra regarded him as substantially limited in a major life activity.[7] The only major life activity that Plaintiff points to is working.[8] (Def.'s MSJ App. 38-40, Rodriguez depo. 106-08). However, all ConAgra did was reject Plaintiff for a single job. This is hardly regarding a person as substantially limited in working. *See, e.g.*, *Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc.*, 242 F.3d 610, 616 (5th Cir. 2001) ("an employer does not necessarily regard an employee as having a substantially limiting impairment simply because it believes the employee is incapable of performing a particular job").

Courts have repeatedly held that in order to show substantial limitation on the major life activity of working, it is insufficient to demonstrate only disqualification from the plaintiff's particular job or even a narrow range of jobs. 29 C.F.R. § 1630.2(j)(3)(i); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999); *Gowesky*, 321 F.3d at 508; *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 860 (5th Cir. 1999); *Deas*, 152 F.3d at 481. Rather, the plaintiff must produce facts raising an inference that the company perceived his condition as one that disqualified him from a broad class of jobs. 29 C.F.R. § 1630.2(j)(3)(i); *Sutton*, 527 U.S. at 491; *Deas*, 152 F.3d 471; *Burch*, 119 F.3d at 322; *Stinson v. West Suburban Med. Ctr.*, No. 97-C-3701, 1998 U.S. Dist. LEXIS 566, at *13 (N.D. Ill. Jan. 13, 1998) (attached as Exhibit 3); *see*

---

[7] Moreover, as discussed in detail below, Plaintiff was not regarded as having a cognizable impairment under the ADA/TCHRA.

[8] The EEOC regulations reluctantly define "major life activities" to include working. As the Supreme Court has observed, working should be viewed as a life activity as a "last resort," *only* "[i]f an individual is not substantially limited with respect to *any other* major life activity." *Sutton*, 527 U.S. at 492 (citing 29 C.F.R. § 1630.2(j)) (emphasis added). Moreover, the Supreme Court has not yet determined whether that regulation is valid. *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 523 (1999); *Sutton*, 527 U.S. at 492.

*Moore*, 221 F.3d at 954 (it is the *plaintiff* who must come forward with evidence that the employer believed him to be precluded from the class or range of jobs).

Plaintiff cannot meet his burden of proof. Zamora was the one who decided to withdraw the offer, and Plaintiff cannot put forward any evidence indicating that Zamora perceived Plaintiff as anything more than unable to perform the job he was offered.[9] Courts have regularly found summary judgment to be proper in cases where the plaintiff cannot put forth any evidence of the employer's perception. *See Murphy*, 527 U.S. at 524 (summary judgment properly granted where plaintiff had put forth no evidence that he was regarded as unable to perform a class of jobs utilizing his skills); *Zenor*, 176 F.3d at 861 (judgment as a matter of law properly granted for employer where plaintiff had presented no evidence that employer regarded him as limited in his ability to work in a broad range of jobs); *Deas*, 152 F.3d at 482 (affirming summary judgment for employer where plaintiff had presented no evidence that employer regarded her as unable to perform any job other than the specific position at issue); *Burch*, 119 F.3d at 322 (judgment as a matter of law properly granted in favor of employer where plaintiff offered no evidence demonstrating that employer regarded his alcoholism as substantially limiting his ability to work or his other major life activities).

---

[9] Although Dr. Morris testified that he thought Plaintiff's failure to control his diabetes prevented him from working in any job, Dr. Morris is not an employee or agent of ConAgra. Additionally, there is no evidence that such opinion was ever even communicated to ConAgra. Thus, there is no basis for imputing that particular opinion of Dr. Morris to ConAgra. *See Schuler v. Supervalu, Inc.*, 336 F.3d 702, 705 (8th Cir. 2003) (mere fact that clinic rendered services to employer was insufficient to establish the type of relationship that would justify imputing clinic's knowledge to the employer); *see also E.E.O.C. v. J.B. Hunt Transp., Inc.*, 321 F.3d 69, 76 (2d Cir. 2003) (comments made by people other than the ultimate hiring authority "simply are not sufficient to indicate that [defendant] thought the applicants were more broadly limited"); *Standard v. A.B.E.L., Inc.*, 161 F.3d 1318, 1327 (11th Cir. 1998) (comments by individual without decision-making authority could not establish that employer regarded employee as disabled); *Deas*, 152 F.3d at 476 n.9 (opinions or perceptions of individuals other than the person who made the decision to discharge the plaintiff were of little significance to Plaintiff's claim); *Roberts v. Unidynamics Corp.*, 126 F.3d 1088, 1093 (8th Cir. 1997) (comments by co-workers that were not made to or by company officials cannot support claim that company regarded plaintiff as disabled); *Fenton*, 926 F. Supp. at 1445 (to impute opinions or beliefs of other employees to defendants "would be unjust" when there was no objective evidence demonstrating that defendants shared those opinions or beliefs).

Indeed, Plaintiff admits that he never inquired about any other positions with ConAgra, and there is absolutely no evidence that Zamora indicated or even believed that Rodriguez should not attempt to find a job somewhere else. (Def.'s MSJ App. 33, 38-40, Rodriguez depo. 100, 106-08). The only "evidence" Plaintiff has is his generalized allegations that ConAgra regarded him as disabled and the fact that the job offer was withdrawn. It is well-established, however, that such generalized allegations are not competent summary judgment evidence. *E.g., Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). Further, the United States Supreme Court has pointed out the fallacy of relying on the adverse employment action itself to prove "regarded as."

> [T]here may be some conceptual difficulty in defining 'major life activities' to include work, for it seems to argue in a circle to say that one is excluded, for instance, by reason of an impairment from working with others . . . then that exclusion constitutes an impairment, when the question you're asking is, whether the exclusion itself is by reason of handicap.

*Sutton*, 527 U.S. at 492; *see J.B. Hunt Transp., Inc.*, 321 F.3d at 77 ("we emphasize that this Court will not presume a mistaken assumption of disability based only on an employer's decision not to hire certain candidates"); *Moore*, 221 F.3d at 954 (refusing to assume a perception of disability based on the plaintiff's termination). Therefore, Plaintiff cannot establish that ConAgra regarded him as disabled, and his claim for disability discrimination must fail.

**B. Plaintiff's Failure To Control His Diabetes Cannot Support A Disability Claim.**

Second, assuming *arguendo* that Plaintiff could muster up evidence that ConAgra perceived him to be unable to work in a broad range of jobs, his claim still fails because he cannot show that ConAgra perceived him to have an impairment that would be covered by the Act. It is undisputed that the reason that ConAgra did not hire Plaintiff is not because he had diabetes, but rather because ConAgra believed that he was *not controlling* his diabetes.

- Zamora testified that she understood, from the Medical Qualification Form, that the reason that Dr. Morris did not qualify Plaintiff for the job was because Plaintiff was not controlling his diabetes. (Def.'s MSJ App. 50-51, 52, Zamora depo. 56-57, 60). Zamora further testified that if Plaintiff would have supplied her with documentation from another doctor showing that his diabetes was controlled, Plaintiff would have gotten the job. (Def.'s MSJ App. 56-57, Zamora depo. 71-72).
- Dr. Morris testified that the reason he did not qualify Rodriguez was not because Rodriguez had diabetes but rather because his diabetes was uncontrolled. (Def.'s MSJ App. 87-88, Morris depo. 59-60). If Rodriguez's diabetes had been controlled, Dr. Morris would have qualified him to work at ConAgra's plant. (Def.'s MSJ App. 88-89, Morris depo. 60-61).
- Plaintiff testified that he believes that ConAgra would have hired him if it thought that his diabetes was under control. (Def.'s MSJ App. 34, Rodriguez depo. 102).

Plaintiff admits that he does not have any reason to think that ConAgra has any prejudices or mistaken beliefs about diabetics. (Def.'s MSJ App. 34, Rodriquez depo. 102). In fact, ConAgra employs a number of diabetic individuals at the Ranch Style Beans plant. (Def.'s MSJ App. 35, Rodriguez depo. 103; Def.'s MSJ App. 54-55, 63, Zamora depo. 68-69, 94). One such diabetic employee was hired around the same time that Plaintiff's job offer was withdrawn. (Def.'s MSJ App. 55, Zamora depo. 69). Notably, this individual was also examined by Dr. Morris who qualified him even though he, like Plaintiff, is diabetic. (Def.'s MSJ App. 94, Salazar Medical Qualification Form). *See Lindloff v. Schenectady Int'l*, 972 F. Supp. 393, 395

(S.D. Tex. 1997) (defendant's employment of other workers with leukoderma showed that defendant did not regard leukoderma as disabling).

Faced with the unavoidable fact that ConAgra does not discriminate against diabetics, Plaintiff tries to make much of his contention that Dr. Morris was mistaken in his assessment that Plaintiff's diabetes was uncontrolled. However, Plaintiff is misguided. As discussed below, a mistaken belief, by itself, is not enough to support a "regarded as" claim; all "regarded as" claims involve some type of mistaken belief. Rather, the employer must have believed that the employee had an "impairment" that would be covered under the statute. A failure to control an uncontrollable illness clearly is not protected under the statute, and thus Plaintiff's claim must fail.

**1. A Perceived Impairment Must Meet The Requirements Of An Actual Impairment.**

To be considered disabled under the "regarded as" prong of the statute, it is not enough for a plaintiff to simply allege that the employer believed the employee to be somehow disabled. *Francis v. City of Meriden*, 129 F.3d 281, 286 (2d Cir. 1997). Rather, a plaintiff must allege that the employer regarded the employee to be suffering from an impairment within the meaning of the statute. *Id.* at 286. In other words, "if an impairment is not a disability for actual disability purposes, it is also not a disability for perceived disability purposes." *Lessard v. Osram Sylvania, Inc.*, 175 F.3d 193, 199 (1st Cir. 1999); *see Francis*, 129 F.3d at 285 ("plaintiff must allege that the employer believed, however erroneously, that the plaintiff suffered from an 'impairment' that, if it truly existed, would be covered under the statute"); *see also Moore*, 221 F.3d at 950 ("[i]f [plaintiff's] condition does not rise to the level of a disability as defined by the ADA, then he cannot prevail on his claim even if [the employer] terminated him expressly because of his condition).

Consequently, not everything can support a "regarded as" claim. *See Francis*, 129 F.3d at 287 ("regarded as" prong should not become "a catch-all cause of action for discrimination based on . . . things far removed from the reasons the statutes were passed"); *Christian v. St. Anthony Med. Ctr.*, 117 F.3d 1051, 1053 (7th Cir. 1997) ("[i]f the employer discriminates against them on account of their being (or being believed by him to be) ill, even permanently ill, *but not disabled*, there is no violation") (emphasis added), *cert. denied*, 523 U.S. 1022 (1998). "This is a subtle but important point." *Christian*, 117 F.3d at 1053. The EEOC has emphasized the importance of "distinguish[ing] between conditions that are impairments and [other] characteristics that are not impairments." 29 C.F.R. § 1630.2(h). Likewise, the United States Supreme Court has recognized that "an employer is free to decide that physical characteristics or medical conditions that do not rise to a level of impairment – such as one's height, build or singing voice – are preferable to others, just as it is free to decide that some limiting, but not *substantially* limiting impairments make individuals less than ideally suited for a job." *Sutton*, 527 U.S. at 490-91 (emphasis in original); *see Francis*, 129 F.3d at 286 (warning against "open[ing] up the 'regarded as' prong[] of the ADA . . . to a range of physical conditions . . . not meant to be covered by the act[]"); *cf. Watson v. City of Miami Beach*, 177 F.3d 932, 935 (11th Cir. 1999) (characterizations of the plaintiff's behavior as paranoid, disgruntled, oppositional, etc. merely showed that he had serious personality conflicts with other employees, and such conflicts did not rise to the level of a mental impairment under the ADA). As discussed in the following section, one such "condition" that does not rise to the level of an "impairment" is Plaintiff's *failure to control* his diabetes.

### 2. A Failure To Control An Illness Is Not Protected Under The ADA/TCHRA.

Because it was Plaintiff's perceived *failure to control* his diabetes that led to him not getting the job, he was not regarded as having a cognizable "impairment" under the ADA/TCHRA. A perceived failure to control his diabetes cannot support a TCHRA claim because an actual failure to control his diabetes would not support a disability discrimination claim. *See, e.g.*, *Lessard*, 175 F.3d at 199 ("if an impairment is not a disability for actual disability purposes, it is also not a disability for perceived disability purposes"); *Francis*, 129 F.3d at 285 ("plaintiff must allege that the employer believed, however erroneously, that the plaintiff suffered from an 'impairment' that, if it truly existed, would be covered under the statutes").

Courts have consistently held that a failure to control an otherwise controllable illness precludes liability under the ADA. For example, the Seventh Circuit has stated that "[a] plaintiff cannot recover under the ADA if through his own fault he fails to control an otherwise controllable illness." *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 570 (7th Cir. 1997); *accord Brookins v. Indianapolis Power & Light Co.*, 90 F. Supp.2d 993, 1006 (S.D. Ind. 2000). Other cases have reached this same conclusion. *See, e.g.*, *Burroughs v. City of Springfield*, 163 F.3d 505, 507-09 (8th Cir. 1998) (diabetic failed to state a claim of disability discrimination where he failed to control his controllable disease); *Siesken v. Village of Arlington Heights*, 65 F.3d 664, 667 (7th Cir. 1995) (plaintiff cannot state a cause of action under the ADA due to his failure to control a controllable disability); *Pangalls v. Prudential Ins. Co. of Am.*, No. 96-0167, 1996 WL 612469, at *3 (E.D. Pa. Oct. 15, 1996) (plaintiff not disabled because condition could readily be remedied surgically).

This makes perfect sense especially when, such as in this case, the reason that the illness is uncontrolled is because of the plaintiff's own behavior. *See Roberts v. County of Fairfax, Va.*, 937 F. Supp. 541, 548 (E.D. Va. 1996) ("nothing in the ADA alters the sensible fact that legally competent adults . . . are responsible for making their own decisions concerning whether the seek . . . treatment for their problems"). "A plaintiff who does not avail himself of corrective medication is not a qualified individual under the ADA." *Hewitt v. Alcan Aluminum Corp.*, 185 F. Supp.2d 183, 189 (N.D.N.Y. 2002); *accord Tangires v. The Johns Hopkins Hosp.*, 79 F. Supp.2d 587, 596 (D. Md.), *aff'd without op.*, 230 F.3d 1354 (4th Cir. 2000).

This is consistent with the United States Supreme Court's holding that the determination of whether a person has a disability within the meaning of the ADA must be made with reference to corrective mitigating measures, including medication. *Sutton*, 527 U.S. at 483-87; *Murphy*, 527 U.S. at 521; *see Hewitt*, 185 F. Supp.2d at 188 ("[a] disability exists only where an impairment substantially limits a major life activity not where it might, could or would be substantially limiting if mitigating measures were not taken"). It follows then that a "plaintiff cannot gain ADA protection by unilaterally deciding, without justification, not to use prescribed medication which corrects or alleviates his condition." *Bowers v. Multimedia Cablevision, Inc.*, No. 96-1298-JTM, 1998 WL 856074, at *4 (D. Kan. Nov. 3, 1998) (attached as Exhibit 4).

The situation in *Sutton* illustrates this basic point. In that case, each of the two plaintiffs had severe myopia. 527 U.S. at 475. Without their eyeglasses or contact lenses, each plaintiff's vision was 20/400 or worse. *Id.* However, with the use of corrective lenses, their vision was perfect, and thus they were not disabled. *Id.* Because corrective measures must be considered, the plaintiffs could not have gained ADA protection simply by choosing not to wear their glasses or contact lenses.

The bottom line is that all ConAgra thought was that Plaintiff was not properly taking his medication to control his diabetes. "The choice being [his], it seems difficult if not impossible to understand why the actions of the defendant should be deemed discriminatory." *Franklin v. U.S. Postal Serv.*, 687 F. Supp. 1214, 1218 (S.D. Ohio 1988); *see Rose v. Home Depot USA, Inc.*, 186 F. Supp.2d 595, 614 (D. Md. 2002) (plaintiff does not have a disability under the ADA if he has refused to avail himself of proper treatment); *Hewitt*, 185 F. Supp.2d at 189 (plaintiff not protected under the ADA where he admitted that his post-traumatic stress disorder was correctible by medication which he voluntarily chose not to take); *Tangires*, 79 F. Supp.2d at 596 (plaintiff not protected under the ADA since her asthma was corrected by medication, and she voluntarily refused the recommended medication); *Roberts*, 937 F. Supp. at 549 (consequence of plaintiff's decision not to avail himself of treatment for his condition was that he was not a qualified individual under the ADA); *cf. Todd v. McCahan*, 158 F. Supp.2d 1369, 1379 (N.D. Ga. 2000) (no fact issue regarding disability where defendants believed plaintiff was capable of performing the job but simply unwilling to do so in a satisfactory manner).

## III. CONCLUSION

Nothing in this case can support a claim for disability discrimination. ConAgra simply believed that Plaintiff was not properly taking his medication and therefore rejected him for a single job. There is no evidence that ConAgra harbored any discriminatory attitudes towards diabetics or that it considered Plaintiff limited or precluded from working in any other types of jobs. In other words, there is no evidence of discrimination. Accordingly, ConAgra requests that this Court grant its motion for Summary Judgment, dismiss this case with prejudice, and grant ConAgra all other relief to which it is justly entitled.

Respectfully submitted,

Arthur T. Carter
State Bar No. 00792936
HAYNES AND BOONE, L.L.P.
901 Main Street, Suite 3100
Dallas, Texas 75202
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

and

Helen Thigpen
State Bar No. 00797756
HAYNES AND BOONE, L.L.P.
2502 N. Plano Road, Suite 4000
Richardson, Texas 75082-4101
Telephone: (972) 739-6900
Telecopier: (972) 680-7551

ATTORNEYS FOR DEFENDANT
CONAGRA GROCERY PRODUCTS
COMPANY

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing instrument has been sent by certified mail, return receipt requested ( 7160 3901 9842 0875 6819 ) to Plaintiff's counsel, Donald E. Uloth, Uloth & Peavler, L.L.P., 2626 Cole Avenue, Suite 400, Dallas, Texas 75204, on this 31st day of October, 2003.

R-45207_1.DOC